UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ACE AMERICAN INSURANCE COMPANY,

                  Plaintiff,

– against –

SEWELL L. "HUNTER" FREY, JR., THE
ESTATE OF EDUARDO NUNEZ, THE ESTATE
OF DANIELA ABREU, TERESA HENRIQUEZ,
ABEL GARCIA, RAYMOND BAUTISTA, and
THE ESTATE OF JOSE HENRIQUEZ,

                  Defendants.

**OPINION AND ORDER**
17 Civ. 6810 (ER)

Ramos, D.J.:

    This case arises out of a rental car accident that resulted in the death of three adults and an unborn child. At the time of the accident, Eduardo Nunez ("Nunez") was driving a car Sewell L. "Hunter" Frey, Jr. ("Frey") rented from National Car Rental ("National"). Frey purchased supplemental insurance for the rental car from Ace American Insurance Company ("Ace" or "Plaintiff"). Ace seeks a declaration that it has no duty to defend or indemnify Frey[1] or any other claimant for the claims asserted in three underlying actions related to the accident.[2] Defendants counterclaim that Ace is required to cover their losses. Ace moves for summary judgement. For the reasons set forth below, Ace's motion is DENIED.

---

[1] The court entered a default judgement against Frey as he did not answer the complaint and further ordered that the default judgement would not bar the claims brought in this actions. Docs. 46, 55.

[2] The Complaint references the three New York Supreme Court, Bronx County actions (collectively the "Underlying Actions"). Doc. 1, ¶ 1.

**I.     BACKGROUND**

   **A. The Accident**

On January 28, 2012, Frey rented a Chrysler vehicle from National Car Rental ("National") at LaGuardia Airport in Queens, New York. Doc. 71, ¶¶ 1, 16. On February 2, 2012, Eduardo Nunez was driving the vehicle on the Major Deegan Expressway in the Bronx, New York when he lost control of the vehicle, which he was reportedly driving at "a high rate of speed." *Id.* ¶ 14–15. Nunez crashed into a concrete pillar killing himself, Daniela Abreu ("Abreu") and her unborn child, and Jose Henriquez ("Henriquez"), while seriously injuring Abel Garcia ("Garcia") and Raymond Bautista ("Bautista"). *Id.* ¶ 15. The parties do not provide information regarding the relationship between Frey and Nunez, if any, or how Nunez got access to the rental vehicle. Defendants do state that Garcia was Frey's employee. Doc. 68, 5. The injured persons and the estates of the deceased (collectively, the "Defendants") filed multiple lawsuits against Frey, Nunez, National, and a variety of other defendants including the City of New York and Chrysler. Doc. 71, ¶ 16. National is defending Frey in the Underlying Actions. Doc. 1, ¶ 6.

   **B. The Rental Agreement**

Frey rented the vehicle pursuant to the terms of a rental agreement and a policy jacket,[3] which formed part of the rental agreement collectively the "Rental Agreement"). Doc. 71, ¶ 1. Frey paid $343.72 to rent the vehicle for one week, an additional $90.65 for Supplemental Liability Insurance ("The Ace Policy"), and $63.00 for a Loss Damage Waiver. Doc. 59-1, 4. The Rental Agreement provided "renters and authorized drivers" with minimum liability coverage of $100,000 per accident involving the death of more than one individual. *Id.* at 5. It

---

[3] In this instance, the policy jacket is a preprinted brochure containing boilerplate policy language, such as definitions and usage limitations.

also provided that no one other than the renter or authorized additional drivers ("AADs") could drive the vehicle without National's prior written consent. Doc. 71, ¶ 2. AADs were defined as "any individual in addition to Renter, who is permitted by [National], State law or separate agreement…to operate the Vehicle." *Id.* Frey signed the Rental Agreement but did not list any AADs, which Frey would have had to pay an additional driver charge to add. *Id.* ¶¶ 3–4.

### C. The Ace Policy

In addition to the Rental Agreement, Frey purchased an optional supplemental insurance policy (the "Ace Policy") offered by National. Doc. 71, ¶ 20. The Ace Policy is excess of the New York State statutory minimum coverage required by law to be included in any vehicle rental. *Id.* ¶ 6. Frey, the renter, was a "Named Insured," defined in the Ace Policy as the person renting the vehicle or any additional authorized driver, as defined in the Rental Agreement. *Id.* ¶ 9. The Ace Policy expressly disclaimed liability arising out of the use of the vehicle by any unauthorized driver. *Id*. ¶¶ 10–11. The Ace Policy included a Supplemental Uninsured/Underinsured Motorists Endorsement ("SUM Endorsement"). *Id.* ¶ 24. The SUM Endorsement states that Ace will pay for sums that the named insured is legally entitled to recover from the owner or driver of an uninsured motor vehicle. *Id.* ¶ 25.

## II. PROCEDURAL HISTORY

Ace filed the complaint on September 7, 2017, seeking a declaration holding that Ace owes no coverage obligation, including any duty to defend or indemnify, to Frey or any other person for the underlying actions. Doc. 1. On November 22, 2017, Defendants Garcia and Bautista answered the complaint, counterclaiming that Ace must cover their losses as a matter of law. Doc. 22. Defendants Abreu and Henriquez responded on December 6, 2017. Doc. 26. Approximately one week later, Ace responded to the counterclaim. Doc. 28. Ace also filed a

request to enter default against Frey, the estate of Nunez, and the estate of Henriquez for failure to appear or otherwise respond to the complaint. Doc. 33. After an order to show cause hearing, the Court entered a December 16, 2018 default judgment against Frey. Doc. 46. The Court amended the default judgment order on May 9, 2018 to hold it does not bar Defendants' claims against Ace in this action. Doc. 55. On November 9, 2018, Ace filed the instant motion for summary judgment, a Rule 56.1 statement, and a letter motion for oral argument. 8. Docs. 57, 60, 61.

## III. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id*. The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

## IV. DISCUSSION

### A. Coverage Under the Ace Policy

The hazards covered under the Ace Policy, death, bodily injury, and damage to property, are prescribed by state law. With respect to New York insurance contracts, the Second Circuit resolves ambiguities strictly against the insurer. *Kimmins Indus. Serv. Corp. v. Reliance Ins. Co.*, 19 F.3d 78, 81 (2d Cir. 1994) (collecting cases). The Ace Policy pays for amounts of loss exceeding the limits of statutory liability in the underlying insurance (the Rental Agreement), but only for the "hazards" insured by the Rental Agreement. Doc. 59-2, 7. The Ace Policy does not define the term "hazards" and Defendants argue it should be construed against them. Doc. 69-7, 1 n.1.

Defendants Garcia and Bautista claim the hazards are those whose coverage is dictated by public policy, pursuant to the interplay between N.Y. Veh. & Tr. Laws § 370(1) (applying minimum liability limits to rental car companies for loss arising from the death or bodily injury of persons) and § 388 (stating that every vehicle owner shall be liable for death or injuries to person or property resulting from negligent operation of the vehicle by a person with the permission, implied or express, of the owner). Doc. 69-7, 9; *see also ELRAC LLC v. Duque*, 52 Misc. 3d 30, 32, 35 (N.Y. App. Term. 2016) (finding the interplay between § 370 and § 388 means that car rental companies are bound to provide coverage to unauthorized permissive drivers). However, the interplay argument does not hold here because the civil liability provision contained in § 388 was preempted in 2009 by federal law. *See Stratton v. Wallace*, No. 11-CV-0074A SR, 2012 WL 3201666, at *5 (W.D.N.Y. Aug. 2, 2012) (finding 49 U.S.C. § 30106, commonly known as the Graves Amendment, expressly preempted the vicarious liability provisions of § 388). In any case, Ace agrees that the Ace Policy restricted the losses that it

covered to those resulting from bodily injury, including death, and property damage, as mandated by public policy.  Doc. 57, 6.

Ace denies liability on the basis that National did not defend Frey pursuant to the minimum statutory limits included in the Rental Agreement, but rather pursuant to the New York financial responsibility laws:  N.Y. Veh. & Tr. Law § 370(1) (setting minimum liability limits) and N.Y. Ins. Law § 3420(e) (requiring auto insurance policies to cover named insured, and any person operating or using vehicle with named insured's express or implied permission, against liability for death, injury sustained, loss, or damage).  Doc. 70, 2.  The Ace Policy defined "named insured" as (1) the person renting the vehicle, (2) any additional authorized driver as defined in the Rental Agreement, or (3) as required by statute, who has elected to purchase optional "Extended Protection Liability Insurance" (the Ace Policy) for an additional daily charge under the Rental Agreement.  Doc. 59-2, 10.  Definitions one and three are easily dispensed with.  There is no dispute that Frey, and not Nunez, rented the vehicle and paid for the Ace Policy.  The Court next addresses whether Nunez was an AAD, and subsequently a named insured covered by § 3420(e).

Nunez was an AAD because § 388 creates a statutory presumption that National consented to his use of the rental vehicle.  Although vicarious liability for commercial car lessors was preempted by federal law, the remaining § 388 provision creates a presumption that the driver operated the vehicle with the owner's consent, express or implied, which may be rebutted by substantial evidence to the contrary.  *See Piano Exch. v. Weber*, 168 A.D.3d 1017, 1018 (2nd Dept. 2019).  The Rental Agreement defined an AAD as "any individual, in addition to Renter, who is permitted by Owner, State law or separate agreement…to operate the Vehicle."  Doc. 71, ¶ 2. The rental jacket lists in two separate places that supplemental liability insurance ("SLI"),

6

like the Ace Policy, only applies to use by the renter or an ADD. *Id.* ¶ 12. Nunez is not expressly listed on the Rental Agreement or a separate agreement, but under state law he is an AAD. Ace has failed to rebut the presumption that National consented to his use of the car. Therefore, Nunez was an authorized user[4] of the vehicle and covered under the Rental Agreement.

Furthermore, § 3420(2) states that a named insured, like Frey, can give permission to another person to drive the car, making that person a named insured too. The issue of whether the renter gave consent to the driver is a question of fact that is best suited for a jury. *See Lawrence v. Myles*, 221 A.D.2d 913, 914 (4th Dept. 1995). In *Lawrence*, the court held that summary judgment was not warranted when a rental car company failed to rebut the presumption that a mother gave her son permission to use the rental vehicle. The testimonies of the mother and son were inconsistent and raised a question of fact as to whether the mother gave her son implied permission to operate the vehicle on the day of the accident—she had given him express permission for the day before. Accordingly, the Court held that these factual inconsistencies raised an issue of fact for the jury. Here, it is unclear whether Frey gave permission to Nunez to operate the vehicle and so this becomes an issue of fact for the jury.

### B. Ace is Estopped From Disclaiming Coverage by New York Insurance Law

Having found that Nunez was covered under the Rental Agreement, the Court holds that Ace was required to provide Defendants with written notice of its denial of liability. Pursuant to New York Insurance Law § 3420(d)(2), insurance carriers must disclaim coverage with a written notice as soon as reasonably possible:

---

[4] Ace incorrectly applies the definition of "authorized driver" found in N.Y. Gen. Bus. Law § 296-z(a), which only applies to optional vehicle protections, agreements that the rental company will not hold an authorized driver liable for all or any part of any damage or loss to the rented vehicle. Frey purchased a "Loss Damage Waiver" but it is a damage indemnification for Frey and not a coverage term. Doc. 59-1, 4.

> If under a liability policy issued or delivered in [New York], an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident...it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

If the insurance carrier does not disclaim coverage in a timely manner, then it is precluded from later successfully disclaiming coverage. *NGM Ins. Co. v. Blakely Pumping, Inc.*, 593 F.3d 150, 153 (2d Cir. 2010).

Ace asserts that pursuant to the seminal case, *Zappone v. Home Insurance Co.,* it was not required to provide notice of their disclaimer of liability because Nunez was an "unauthorized driver" and never covered by the Rental Agreement. 55 N.Y.2d 131, 134 (1982). In *Zappone*, a brother crashed his sister's Mercedes Benz which was covered under Aetna Insurance Company ("Aetna"). The siblings lived in the same household and the sister owned another car insured by a different insurance company, Home Insurance Company ("Home"). The *Zappone* court held that Home was not liable because it did not cover either the vehicle or the person involved in the car crash. The *Zappone* court held that notice under § 3420(d)(2) was not required because the claim was a *lack of inclusion* and notice is only mandatory for a denial of liability based on an *exclusion. Id.* There is a lack of inclusion when the policy never covered the liability in question, and an exclusion when a policy covered the liability in question, but the exclusion "uncovered" it. *Max Specialty Ins. Co. v. WSG Invs. LLC*, 2012 WL 3150579, at *5 (E.D.N.Y. Apr. 20, 2012). The New York Court of Appeals drew this distinction because the purpose of § 3420(d)(2) was to avoid prejudice to the insured and the insured claimants, not create a source of indemnification which had never been contracted for. *Id.*

When determining whether there is no coverage based on exclusion or lack of inclusion, courts look at whether the definitional language in the policy covered the claim. *See*, *e.g.*,

8

*Citizens Insurance Co. v. Risen Foods, LLC*, 880 F.3d 73 (2d Cir. 2018) (finding lack of inclusion where an umbrella policy was predicated on the types of vehicles the underlying insurance covered, and the underlying insurance did not apply to the vehicle at hand). Ace's reliance on *Citizens Insurance Co. v. Risen Foods, LLC*, is misplaced. 880 F.3d 73 (2d Cir. 2018). In *Citizens*, a business owner's umbrella policy did not cover autos generally, but only two types of autos (non-owned and hired autos) defined in the underlying policy. These definitions did not apply to the vehicle at hand, a truck owned by the company's employee, and so there was no coverage due to a lack of inclusion.

Similarly, Ace points us to *Britt v. General Star Indem. Co.*, 494 F. App'x. 151 (2d Cir. 2012), where a permissive user provision was not an exclusion. There a business insurance policy allowed any of its employees to drive the company cars. The *Britt* court held this was a fundamental grant of coverage as the policy did not specify which employees or cars, and not an exclusion. The critical difference is that the Ace Policy expressly provides payment for loss exceeding the statutory minimum, but only for hazards found in the Rental Agreement. The instant case arises from the deaths and bodily injuries of several individuals, which are hazards covered by the Rental Agreement. Additionally, the Rental Agreement shows that renters and AADs are the only persons covered by this policy. Doc. 59-1, 5. Accordingly, when a policy specifies the types of person(s) and vehicle(s) covered, and a disclaimer removes coverage from such person or vehicle, that disclaimer is an exclusion.

However, Ace denies liability on the basis that Nunez was an unauthorized driver. Under the Ace Policy, "unauthorized drivers" are "any individual who does not have a valid driver's license, does not meet the rental requirements as stated in the Rental Agreement *and* has not paid an additional driver charge." Doc. 59-2, 11 (internal quotations omitted) (emphasis added).

9

There is no dispute that Nunez had a valid driver's license. Doc. 71, ¶ 34. And as discussed *supra*, Nunez was an AAD under the Rental Agreement because state law mandated his coverage. On the other hand, Nunez meets the third definition of an "unauthorized driver" because no additional driver fee was paid for him. Doc. 58, 7. Based on the record before the Court, Frey did not pay the additional driver fee. Doc. 71, ¶ 5. The fee that Defendants claim authorized an additional driver to use the vehicle is the fee for the Ace Policy.[5] These are two separate charges. However, state law still presumes that Nunez had National's consent to drive the car and Ace has not rebutted that presumption. *See Asaro v. McGuire Auto Rental Leasing, Inc.*, 238 A.D.2d 366, 366 (2nd Dept. 1997) (describing the presumption as "very strong"). Regardless of whether Frey did not pay the additional driver fee, state law mandated that the Rental Agreement cover Nunez who was an AAD and a named insured. Accordingly, the Ace Policy disclaimer against unauthorized drivers was an exclusion.

To exercise the unauthorized driver exclusion successfully, Ace needed to send notice to the possible claimants within a reasonable time. Taking years to send the written disclaimer notice is unreasonable as a matter of law. *See United States Underwriters Ins. Co. v. IMAGE BY J &K, LLC*, 335 F. Supp. 3d 321, 345 (E.D.N.Y. 2018) (holding three-and-a-half-month delay was unreasonable as a matter of law); *see also City of New York v Greenwich Ins. Co.*, 95 A.D.3d 732, 733 (1st Dept. 2012) (holding five-and-a-half-month delay was unreasonable as a matter of law). Ace did not send notice to Defendants disclaiming liability prior to filing this complaint on September 7, 2017, roughly five years after the accident on February 2, 2012. Doc.

---

[5] In their response to Ace's 56.1 Statement, Defendants deny "that no additional fee was paid to allow any person, other than Mr. Frey, to be an authorized driver of the rental vehicle. Doc. 71, ¶ 5. In fact, Frey paid an additional fee of $12.95 for seven days in the amount of $90.65 was paid for Supplementary Liability Insurance [the Ace Policy]." *Id.*

71, ¶ 40. Thus, Ace's disclaimer of liability was unsuccessful, and the Court cannot grant summary judgement in their favor.

## V. CONCLUSION

For the reasons set forth above, Ace's motion for summary judgement is DENIED. Doc. 57. Ace's motion for oral argument is DENIED as moot. Doc. 61. The parties are directed to attend a status conference on October 25, 2019 at 10:00 A.M. The Clerk of the Court is respectfully directed to terminate the motions, Docs. 57, 61.

It is SO ORDERED.

Dated: September 27, 2019
New York, New York

_____
Edgardo Ramos, U.S.D.J.